IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERVE, L.L.C., | ) | CASE NO.  1: 04 CV 1753 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| INVACARE CORP., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This patent action is before the Court subsequent to a Markman hearing held on September 12, 2005.  The parties have filed opening Markman briefs on claim construction as well as response briefs.  The Plaintiff's briefing and argument were confined to two phrases in claim 1 of the patent-in-suit (U.S. Patent No. 5,451,193)(the "'193 Patent").  Plaintiff's counsel stated that Plaintiff had withdrawn claims 3 and 7, without prejudice.  Defendant objected to Plaintiff's untimely unilateral withdrawal of claims 3 and 7 and requested that the Court construe certain terms in those claims or require Plaintiff to withdraw claims 3 and 7 with prejudice.  Since Defendant has answered Plaintiff's complaint relative to claims 3 and 7 and has filed a counterclaim on those claims, Rule 41 of the Federal Rules of Civil Procedure does not permit Plaintiff to unilaterally withdraw those claims without prejudice.  Plaintiff did not seek leave to withdraw without prejudice and Defendant has interposed a reasonable objection to

any withdrawal without prejudice. Accordingly, since Plaintiff did not proceed with the claims it sought to withdraw, claims 3 and 7 are dismissed with prejudice.

## STANDARD OF REVIEW

An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995)(*en banc*), *aff'd*, 517 U.S. 370 (1996). It is the first step, commonly known as claim construction or interpretation, that is at issue at this juncture. Construction of patent claims is a question of law for the court. *Id*. at 979.

In construing claims the court should consider first intrinsic evidence of the record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir.1996). This is the most significant source of the legally operative meaning of disputed claim language. *Id.* When analysis of the intrinsic evidence permits unambiguous definition of the meaning and scope of the claims, as it will in most cases, reference to extrinsic evidence is improper. *Id.* at 1583. The Federal Circuit has recently reaffirmed this principle in *Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir.2005). Although courts can put general or specialized dictionaries and comparable extrinsic sources to appropriate use in helping to ascertain the commonly understood meaning of words, they must give this evidence only the relatively limited weight it is due and not divorce claim terms from the context of the intrinsic evidence. *See id.* at 1318-19, 1322-24.

A court's examination of the intrinsic evidence in a claim construction analysis begins with the

words of the disputed claim itself. *Vitronics Corp*., 90 F.3d at 1582. The claims define the scope of the right to exclude. *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1324 (Fed. Cir.2002) (*quoting Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir.1998)). In the absence of a patentee's "express intent to impart a novel meaning to the claim terms," the words of the claims take on the " 'ordinary and customary meanings attributed to them by those of ordinary skill in the art." ' *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir.2004) (quoting *Int'l Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363, 1369 (Fed. Cir.2004); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc*., 334 F.3d 1294, 1298 (Fed. Cir.2003)).

In assessing the meaning of the claim terms a court must always review the specification. *Vitronics Corp.,* 90 F.3d at 1582. The specification is the part of the patent that "teaches" the invention so that one skilled in the art can make and use it. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1335 (Fed. Cir.2003). The specification is "highly relevant" to claim construction because it may contain special or novel definitions of claim terms when the patentee has chosen to be his own lexicographer, *Vitronics,* 90 F.3d at 1582, or it may help to resolve ambiguity when the ordinary and customary meaning of a term is not sufficiently clear. *Teleflex, Inc.,* 299 F.3d at 1525. In sum, the specification is the " 'single best guide to the meaning of a disputed term," ' *Phillips*, 415 F.3d at 1321 (quoting *Vitronics Corp.,* 90 F.3d at 1582), and is usually "dispositive." *Vitronics Corp*., 90 F.3; *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298,1306-07 (Fed. Cir. 2003).

The final source of intrinsic evidence plays a role similar to the specification in the claim construction analysis. The prosecution history of the patent-the complete record of the proceedings

-3-

before the Patent and Trademark Office-"provides evidence of how the PTO and the inventor understood the patent" and should be considered by the court. *Id.* at 1317. "The patent applicant's consistent usage of a term in prosecuting the patent may enlighten the meaning of that term." *Metabolite Laboratories, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir.2004). The prosecution history may contain "express representations made by the applicant regarding the scope of the claims." *Vitronics Corp.,* 90 F.3d at 1582. But any limitation found in the history must be "clear and unmistakable." *Anchor Wall Sys.,* 340 F.3d at 1307.

If a claim is amenable to more than one construction, the claim should, when possible, be construed to preserve its validity. *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384 (Fed. Cir. 2001); *ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). However, courts are not permitted to redraft claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).

**ANALYSIS**

Patent '193 is entitled "Combined Wheelchair and Walker." It consists of one independent claim and nine dependent claims. Plaintiff requests that the Court construe two phrases used in claim 1 of the '193 Patent: "operatively associated" and "hinders movement."

**A.  The "operatively associated" element**

The first step in this analysis is to review the claim language relative to "operatively associated." The claim provides in pertinent part:

1. A device comprising:

   a) a frame;

>    b) a seat attached to said frame;
>
>    c) a plurality of wheels rotatably attached to said frame;
>
>    d) <u>a braking device operatively associated with said seat</u>;
>
>    e) said braking device including a first, braking state and a second, non-braking state, said first state being a state in which said braking device <u>hinders movement</u> of at least one of said plurality of wheels when a force is applied to said seat, and said second, non-braking stated being a state in which said braking device substantially allows movement of said plurality of wheels when substantially no force is applied to said seat.

Plaintiff asserts that "operatively associated" should be construed as "requir[ing] that the braking device function or operate upon application or removal of a force to the seat." (ECF #22 at 7) Defendant asserts that the phrase should be construed as "a braking device joined or connected to the seat in a manner such that movement of the seat from the "walker" mode to the "wheelchair" mode causes movement of the braking device to initiate or produce a braking effect." (ECF #23 at 5) Clearly, the claim language above supports Plaintiff's proposed meaning that the braking device provides a braking effect when a force is applied to the seat. Defendant's proposed interpretation adds a limitation–movement of the seat from walker to wheelchair mode.

The specification does not provide any specific definition of the term "operatively associated." Rather, the specification echos the wording of the claim: "A braking device is operatively associated with the seat." (ECF #22, Ex. B, col. 2, line 4) The specification provides specific details as to the operation of the braking device in accordance with the applicant's preferred embodiment. Invacare points to the following paragraph in the specification to support its construction:

> The user typically has his or her back facing seat back 26 as the user pushes downwardly on the seat 22, thereby rotating seat 22 clockwise as viewed in FIG. 3, to convert wheelchair 10 from its walker mode to its wheelchair mode.  As seat 22 is rotated sufficiently downwardly, braking shoe 50 engages wheels 18 and prevents movement thereof.  The user will then sit in wheelchair 10 in the wheelchair mode of FIGS. 1 and 2.

(ECF # 22, Ex. B at col. 4, lines 19-26).  Thus, Invacare asserts that rotating the seat engages the brake, and the application of force from the weight of the user is unnecessary.  Verve counters that claim 1 is not limited to the specific embodiment in the '193 patent and that the Federal Circuit will "decline to limit the claims based only on the embodiments in the written description." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111,1120 (Fed. Cir. 2004).  See ECF #30 at 4.

Both parties assert that the terms at issue are used in the specification consistently with their ordinary meaning, and further, that the ordinary meaning, or dictionary definition, supports their interpretation of the terms.  The parties point to dictionary definitions of Operatively–accomplishing what is desired and Associated–to join together, connect.  Thus, a braking device operatively associated with the seat at its intuitive level requires that the brake function be connected to the seat. Verve claims that the braking function is accomplished through force applied to the seat and Invacare argues that the braking function is accomplished through rotating the seat from walker to wheelchair mode.  Either definition could logically fit within the dictionary definition of operatively and associated.

Finally, both parties assert that the other party's proposed construction would make nonsense of or make superfluous claim 1(e).  Claim 1(e) provides:

> e) said braking device including a first, braking state and a

-6-

> second, non-braking state, said first state being a state in which said braking device hinders movement of at least one of said plurality of wheels when a force is applied to said seat, and said second, non-braking stated being a state in which said braking device substantially allows movement of said plurality of wheels when substantially no force is applied to said seat.

Invacare claims that the use of Verve's claimed construction of "operatively associated"-- "when a force is applied to said seat"-- would make 1(e) duplicative of 1(d) and therefore redundant. Verve counters that Invacare's proposed definition of the "operatively associated" term renders the language of element (e), which requires "a force applied to said seat" to put the braking device in a braking state, superfluous. Invacare's argument that rotating the seat puts force on the seat is contradicted by the language in element (e) which requires that in the non-braking state "no force is applied to the seat." Under Invacare's construction, if the movement or rotation of the seat is the "force" referred to then when the seat is moved to the non-braking state to allow unhindered movement of the wheel, force is still being applied to the seat. In this construction the force upon the seat would be the same regardless of whether the seat is moved to the braking or non-braking position. This, Verve insists, cannot be reconciled with the claim language which states that when the device is in the non-braking state, no force is applied to the seat. This confirms that the force applied to the seat referred to in the claim is a downward force on the seat, such as applied by a user and the lack of force applied to the seat referred to in the claim is a removal of force from the seat, such as occurs when a user stands up from a sitting position.

Based upon review of the evidence and the parties' arguments, the Court finds that as proposed by Verve, the "operatively associated" term requires that the seat is connected to the brake

-7-

such that force applied to or removed from the seat engages or disengages the braking state.

### B. The "Hinders Movement" Element

"Hinders movement" is used in claim 1(e) as follows:

> e) said braking device including a first, braking state and a second, non-braking state, said first state being a state in which said braking device **hinders movement** of at least one of said plurality of wheels when a force is applied to said seat, and said second, non-braking stated being a state in which said braking device substantially allows movement of said plurality of wheels when substantially no force is applied to said seat.

The parties have agreed that "hinders movement" means to restrict or impede movement. Thus, the Court adopts Verve's submission that the term "hinders movement" as used in claim 1 means: "a braking device that has two states; one of which restricts movement of a wheel when a force is applied to the seat and the other which allows substantially unhindered movement when the force on the seat is removed." This construction is supported by the intrinsic evidence and represents the plain meaning of the words.

## CONCLUSION

For the reasons set forth above, the elements of claim 1 are construed as follows:

The "operatively Associated" Element: requires that the braking device function or operate upon application or removal of a force to the seat.

The "Hinders Movement" Element: means to restrict or impede movement.

IT IS SO ORDERED.

*Donald C. Nugent*

                                                JUDGE DONALD C. NUGENT

DATED: <u>October 13, 2005</u>